## GALBRAITH and Others v. SIDENER.

COMMON PLEAS COURT.—SIGNATURE OF JUDGE TO PROCEEDINGS.—Under
the statute, the signature of the judge to the record of the proceedings
of the Court of Common Pleas is necessary to give validity to the judg-
ments of the court, and a sale upon a judgment not thus signed is void.

SAME.—*Quære*, whether the judge may not sign the record at any time
during his continuance in office, and whether, in the event of his failing
to do so, his successor may not sign.

APPEAL from the *Bartholomew* Circuit Court.

ELLIOTT, C. J.—This is a complaint filed, originally, by
*Galbraith, Lawrence, Fulwieler, Ketner, Spaugh* and *Anderson*
against *Sidener*, to set aside a sheriff's sale of certain lands
to *Sidener*, and to confirm a subsequent sale thereof to the
plaintiffs, except *Anderson;* but during the progress of the
proceedings, the plaintiffs voluntarily dismissed the suit as
to *Anderson.*

The cause was finally disposed of by the court on the
pleadings, and a proper understanding of the questions in-
volved renders a substantial statement of them necessary.

The complaint alleges that on the 20th of *October*, 1858,
one *Thomas B. Anthony* recovered a judgment in the *Bar-
tholomew* Circuit Court against the plaintiffs *Anderson,
Spaugh* and *Ketner* for $350 06; that at the date of said
judgment, *Anderson*, who was the principal debtor, was
seized in fee of the lands in controversy; that on the
second day of *August*, 1861, an execution was issued on
said judgment for $142 59, besides $20 05 costs, being the
amount then remaining unpaid; that the sheriff of said
county, to whom the execution was delivered, levied the
same on said lands and advertised them for sale at the court
house door, on the 19th day of *October*, 1861, to be sold
without appraisement; that said *Anderson* was then indebted
to said *Spaugh*, individually, in the sum of $1,600, and to
him and the other plaintiffs, jointly, in the sum of $1,000,
and that they were the sureties of *Anderson* in the further
sum of $1,000; that *Anderson* was then in failing circum-

stances, and had no other property than said lands subject to execution; that none of the other debts of *Anderson* had then been reduced to judgment; that to prevent said land from being sold at a sacrifice on said judgment, the plaintiff *Spaugh*, in behalf of himself and the other plaintiffs, called on the sheriff, on the day before that fixed for the sale of said lands, for the purpose of ascertaining the hour of said day at which the sale would be made; that he informed the sheriff of the indebtedness of *Anderson* to the plaintiffs, and that his object was to be present at the sale to bid on the lands, and, if possible, procure them to be sold at their value; that the sheriff thereupon informed said *Spaugh* that the lands would not be offered for sale before one o'clock in the afternoon of said day, and expressly promised him that the sale should not be made in the forenoon; that in violation of said assurance and agreement, the sheriff, combining and confederating with the defendant *Sidener* to prevent a fair sale of the lands, and to enable said *Sidener* to purchase the same for a nominal price, in the absence of competing bidders, offered said lands for sale at the hour of ten o'clock in the forenoon of said day, and then and there immediately sold the same to said *Sidener* for $250, when in truth they were of the value of $2,500, said *Sidener* being the only bidder present, and, at the time of said purchase, well knowing the indebtedness of *Anderson* to the plaintiffs, and of the agreement of the sheriff with *Spaugh* not to offer said lands for sale until one o'clock in the afternoon of said day, and that it was the intention of said *Spaugh* to be present at said sale and bid on said lands; that said *Spaugh* informed the sheriff, on the day previous to said sale, that he would bid at least the amount due on said execution for the rents and profits of the land for seven years; that if he had been present at said sale, *Spaugh* would have bid at least $2,000 for the fee simple of said lands; that said *Spaugh* and *Anderson* arrived at the place of sale within ten minutes after the lands had been struck off to said *Sidener*, and were surprised to learn

that they had already been sold; that thereupon, before any written memorandum of the sale had been made, and before *Sidener* had paid the purchase money or any part thereof, they protested against said sale, and demanded of the sheriff to re-offer said lands for sale, which he refused to do; that *Anderson* then tendered to *Sidener* $250, the amount bid by him, and demanded that said sale be set aside, but the tender was refused; that *Spaugh* thereupon made a like tender, which was also refused; that *Anderson* and *Spaugh* each tendered to the sheriff $200 in satisfaction of the amount due on the execution, but the sheriff refused to receive the same, and consummated the sale of the lands to said *Sidener*, and executed to him a deed therefor. It is further alleged that *Anderson*, having become a non-resident of this State, the other plaintiffs, on the 27th day of *September*, 1862, commenced an action against him in the *Bartholomew* Court of Common Pleas, and upon filing a proper bond and affidavit, sued out an attachment against his property in said county, which was levied on said lands, and that such proceedings were had thereon that on the 24th day of *November*, 1862, they recovered a judgment in said court against *Anderson* for the sum of $597 41, to be collected without appraisement, &c., and an order for the sale of said lands in satisfaction thereof; that on the 21st day of *February*, 1863, the sheriff of said county, by virtue of an order of sale issued on said judgment, sold said lands to the plaintiffs for the sum of twenty-five dollars, and executed to them a deed therefor, due notice of the time and place of said sale having been first given.

Prayer that the sale and conveyance of the lands by the sheriff to *Sidener* be set aside and declared fraudulent and void, and that the title of the plaintiffs under the attachment proceedings be confirmed and quieted, and for general relief. Copies of the judgments, executions and conveyances referred to are made exhibits.

*Sidener* answered in three paragraphs. The first is a general denial of the complaint.

The second alleges that at the time of the purchase of the land by the defendant, at the sheriff's sale under the *Anthony* judgment, and prior to the rendition of that judgment, the lands in controversy were incumbered by a mortgage for two hundred dollars, executed by said *Anderson* and wife to the school fund of said county; that on the 29th of *January*, 1859, said *Anderson* being indebted to the defendant in the sum of $3,300, evidenced by three promissory notes, executed to him a mortgage on the lands in controversy, with other lands, to secure said indebtedness, the wife of *Anderson* joining in said mortgage; that at the *October* term, 1860, of the *Bartholomew* Circuit Court, the defendant recovered a judgment against *Anderson* and for the foreclosure of said mortgage, and a decree for the sale of the lands therein described to satisfy said indebtedness; that the lands described in the mortgage, other than those sold on the *Anthony* judgment, were incumbered by a prior mortgage made by said *Anderson* and his wife to the sinking fund of the State for the sum of $500; that all of said incumbrances on said lands, with interest thereon, remained unpaid at the time he purchased the lands at sheriff's sale on the said *Anthony* judgment, except the sum of $346 75 paid on the defendant's decree of foreclosure; that the defendant, prior to his purchase under the *Anthony* judgment, at the urgent solicitation of *Anderson*, released from his said mortgage sixty acres of the land embraced therein; that the *Anthony* judgment being prior to his mortgage, he purchased the lands at the sheriff's sale in good faith to protect his own lien, and, if possible, to secure the debt due to him. from said *Anderson;* that after he purchased said lands at sheriff's sale, and before the commencement of this suit, he fully paid off said prior mortgages. It further alleges that at the time he purchased said lands, the sheriff supposed the sale was subject to the redemption laws, and did not then execute to him a conveyance therefor, but gave him a certificate of purchase, and that *Anderson*, afterwards, being

satisfied with the sale, ordered the sheriff to execute to the defendant a deed for said lands in pursuance of his said purchase, which the sheriff then did; that afterwards, on the 24th day of *February*, 1862, and before the commencement of said proceedings in attachment, for the purpose of securing the contingent right of *Anderson's* wife in the lands, to which it was subject under his purchase from the sheriff, and to secure the immediate possession of the lands without litigation or trouble, the defendant agreed to, and did, pay to said *Anderson* and wife the sum of $800, in consideration of which said *Anderson* and his wife executed to the defendant a quit-claim deed to said lands, and then gave him the full possession thereof, of all of which the plaintiffs had notice at the time of instituting said proceedings in attachment. It avers that the other lands included in the defendants mortgage, and not sold under the *Anthony* judgment, were not sufficient in value by $1,500 to satisfy the amount due under the mortgage, and denies that there was any conspiracy, fraud or collusion in his purchase at the sheriff's sale, as alleged in the complaint, and by way of cross-complaint prays that the pretended sale and conveyance of the land to the plaintiffs, under the attachment proceedings, be set aside as a cloud on the defendants title, &c. The mortgage from *Anderson* and wife to the defendant, and the judgment of foreclosure thereon, and the quit-claim deed to the defendant referred to, are made exhibits in this paragraph.

The third paragraph, for answer to the rights claimed by the plaintiffs (except *Anderson*) under the alleged judgment in the Court of Common Pleas, and the sale and conveyance of said lands to them by the sheriff under said judgment, alleges that there is no record of such judgment in attachment as alleged in the complaint; that the proceedings of the court of the day on which said pretended judgment was rendered were not signed by the judge of said court during said term, nor at any time during his term of office; that the term of office of Judge BEATTIE McCLEL-

LAND, who was the judge of said court when said pretended judgment was rendered, expired on the — day of *October*, 1864; that *Jeptha D. New* was elected in his stead, and since that time has held said office, and that said McCLELLAND, on the — day of *April*, 1865, long after he had ceased to be the judge of the court in which said proceedings were had, signed the proceedings of the day on which said pretended judgment was rendered, wherefore, &c.

The second and third paragraphs of the answer were demurred to separately and the demurrers overruled, to which the plaintiffs excepted.

*Anderson* filed a separate denial to the second paragraph of the answer. The other plaintiffs replied to the second paragraph: 1. The general denial. 2. That the quit-claim deed from said *Anderson* and wife to the defendant, mentioned in said paragraph, was not made in good faith, as therein alleged, but that said *Anderson* and the defendant, at the time of the execution of said deed, knew of the indebtedness of *Anderson*, mentioned in the complaint; that *Anderson* and the defendant combined and confederated together to cheat, hinder and defraud the plaintiffs, and particularly the plaintiff *Spaugh*, out of their said claims and demands against said *Anderson;* that without the payment of any full consideration for said land by the defendant to *Anderson*, and for the purpose of cheating, hindering, delaying and defrauding the plaintiffs, and especially said *Spaugh*, out of their claims against *Anderson*, the defendant entered into the agreement for said quit-claim deed; that *Anderson* made the deed and the defendant received the same for the purpose of placing the lands beyond the reach of proceedings at law on the claims of said plaintiffs, and the claims upon which the plaintiffs were sureties for *Anderson*, and to enable the defendant to hold said lands under his said fraudulent purchase at the sheriff's sale. A demurrer was sustained to the second paragraph of the reply. The plaintiffs then dismissed the action as to the

plaintiff *Anderson*, and his name as a party to the action was stricken from the record.

The remaining plaintiffs refused to reply to the third paragraph of the answer, and on the defendant's motion a final judgment was rendered for the defendant for want of a reply to said paragraph. The plaintiffs appeal.

Exceptions were taken to the action of the court in overruling the demurrers to the second and third paragraphs of the answer, and in sustaining the demurrer to the plaintiffs' second reply to the second paragraph of the answer.

These rulings are assigned for error. As the final judgment of the court was rendered upon the refusal of the plaintiffs to reply to the third paragraph of the answer, we will first examine the question as to the sufficiency of that paragraph as a bar to the action. It is proper here to remark, that as the action was dismissed as to *Anderson*, and his name stricken from the record before final judgment, the various questions involved must be considered as though he had never been a party to the action. The defense set up by the third paragraph of the answer is, in substance, that the proceedings of the court of the day on which the judgment in the attachment proceedings was rendered, under which the plaintiffs claim title to the land, were not signed by the judge of the court during the term at which the judgment was rendered, nor until long after his term of office had expired and he had ceased to be such judge, and to exercise the functions of the office of judge of said court, and long after the sale of the lands under said judgment by the sheriff to the plaintiffs. Was it necessary to the validity of the judgment that the proceedings of the court of the day of which it formed a part should be signed by the judge? The judgment is claimed to have been rendered by the Court of Common Pleas, and it is contended by the appellants' counsel that the statute does not require the proceedings of that court to be signed by the judge thereof. It is true that there is no provision in the act to establish courts of common pleas which, in terms, requires the

Galbraith and Others *v.* Sidener.

proceedings of that court to be signed by the judge. But the 24th section of that act, (2 G. & H. 25,) declares that "Said common pleas shall be a court of record, and its judgments shall be a lien on real estate in the same manner as the judgments of the circuit court, and on such judgments of the court of common pleas execution shall issue against the goods and chattels, lands and tenements of the judgment debtor, in the same manner and under the same regulations and restrictions as govern executions in the circuit court, unless otherwise expressly provided by law." And section 28 provides, that "such courts shall have all the powers incident to a court of record in relation to the attendance of witnesses, the punishment of contempts, and in enforcing its orders; and in this respect, and in all other proceedings in said court, the rules of proceeding and practice in the circuit court, so far as the same may be applicable, shall be the rule of the common pleas, except in such matters as are otherwise provided for by law." And turning then to section 22 of the act providing for the organization of circuit courts, (2 G. & H. 9,) we find it provided that, "It shall be the duty of the clerk of the circuit court to draw up each day's proceedings at full length, and the same shall be publicly read in open court, after which they shall be signed by the judge; and no process shall issue on any judgment or decree of the court until it shall have been so read and signed." The provisions of this section cannot be deemed to be merely directory, for it expressly declares that no process shall issue on any judgment or decree until it shall have been so read and signed. It makes the signing of the judge essential to the validity of the judgment or decree, as such, for of what value would it be without the power to enforce it by proper process? Nor can we doubt that this provision of the statute is applicable as a "rule of proceeding and practice" to the court of common pleas. Section 420 of the code, in reference to the stay of execution, which applies both to the common pleas and to the circuit court, fixes the time for the com-

mencement of the stay, "from the time of signing the judgment." This expression, "from the time of signing the judgment," evidently has relation to the signature of the judge to the proceedings of the court of the day on which the judgment is rendered, as provided by the 22d section of the circuit court act, and was so recognized in *Tucker* v. *White*, 19 Ind. 253. It was evidently the intention of the legislature, in creating the court of common pleas, that it should be governed as far as possible by the same system and rules of procedure and practice as the circuit court. The code is made applicable to both courts, and the clerk of the circuit court is *ex officio* the clerk of the common pleas; and certainly no reason can be given why the proceedings of the one should be signed by the judge, that would not apply with equal force to the other.

Section 58 of the justice's act, (2 G. & H. 592,) requires that judgments of justices of the peace shall be entered upon the docket and signed by the justice. Under this statute, we held in *Ringle* v. *Weston*, 23 Ind. 588, that without such signature the judgment was void.

The judge of the Court of Common Pleas of *Jackson* county failed to sign the records of the proceedings of said court at the *October* term thereof, 1864, and the legislature subsequently passed an act to legalize the proceedings of said term, as against the effects of such failure, thus recognizing the necessity that the proceedings of that court should be signed by the judge. Acts 1865, p. 52.

We do not decide that the judge who held the court at the time the judgment was rendered might not sign the record afterwards, at any time during his continuance in office, nor that it might not be signed by his successor in office. See *The Life and Fire Ins. Co. of N. Y.* v. *The Heirs of Wilson*, 8 Peters 291. These questions are not now before us, and we express no opinion in reference to them. We simply hold that the entry of the judgment by the clerk did not constitute it a legal judgment until the proceedings of the day were properly signed by the judge having authority to do so.

The question here is as to the effect of the facts alleged in the answer, which the demurrer admits, and not as to the nature or effect of the evidence that might be offered to maintain the answer, if issue had been taken on it. The demurrer admits the facts to be true as stated in the answer. It therefore admits that the proceedings of the court containing the judgment were not signed by any one until long after the sale of the lands under the judgment to the plaintiffs. The order of sale under which the sheriff acted was therefore void, and the purchase under it conferred no title upon the plaintiffs.

But the appellants insist that if the judgment in attachment and their title to the lands under it are void, for the reasons stated, the action would not thereby be defeated for the reason, as they claim, that the facts alleged in the complaint, independent of that judgment and the title claimed by them under it, constitute a good cause of action; and as the third paragraph of the answer relates alone to that judgment and title, that the court therefore erred in rendering final judgment for the defendant on the refusal of the appellants to reply to that paragraph.

The third paragraph only assumes to answer so much of the complaint as sets up the judgment in the attachment suit, and the title to the land claimed by the plaintiffs under that judgment; but if the validity of the complaint depends upon that judgment and sale, then an answer which defeats them is a good bar to the whole complaint.

Are the other allegations of the complaint sufficient of themselves to constitute a good cause of action? It is argued by the appellants' counsel that "as the complaint prays general relief upon the facts, the court might proceed to find the amount due to each creditor, as upon a creditor's bill, and, with a view to complete relief under the statute, remove impediments to the sale of the property." This case differs from one where the debtor makes a fraudulent conveyance of his lands to avoid the payment of his debts, and the creditors file a complaint to set the conveyance

aside as fraudulent, and subject the lands to sale for the payment of their claims. Here, the defendant purchased the land at a judicial sale under a valid judgment and execution, to which he was not a party, and paid therefor a sum more than sufficient to satisfy the execution. The fraud complained of is, that by a fraudulent combination with the sheriff the defendant procured the sale to be made in the absence of other bidders, who he knew intended to be present at the sale and bid on the property; and thereby became the purchaser of the lands at a price greatly below their value. These facts, if true, might have justified the court in setting aside the sale on a complaint filed by *Anderson*, the judgment defendant. But the appellants, though they claim to have been creditors of *Anderson* at the time of the sale, were not judgment creditors; nor did they have any legal lien or claim upon the lands, or upon the surplus proceeds of the sale, after the execution on the *Anthony* judgment was satisfied. Whether under these circumstances a complaint by them, containing in all other respects the necessary averments to constitute a creditor's bill, and to which *Anderson* should be made a defendant, would authorize the setting aside of the sale, and subject the lands to the payment of the debts due them from *Anderson*, we need not now decide, as such a case is not presented by this complaint. Here, the nature of the liabilities of *Anderson* to the appellants is not stated. Whether they rest in parol, or are in writing, and the character and terms of the contract, or other obligation by which they exist, do not appear. *Anderson* would be a necessary defendant to such a complaint; but here he is not made such. He was for a time united with the appellants as a plaintiff, but his name was stricken out, and he then ceased to be before the court in any character. The complaint contains few, if any, of the characteristics of a good creditor's bill. It was evidently designed in the nature of a bill *quia timet*, relying upon the title under the attachment proceedings, and seeking to remove a cloud

therefrom by setting aside the sale and sheriff's deed to the defendant, under the *Anthony* judgment. Its validity even for that purpose may be doubted; but, (without deciding the question,) admitting it to be so, still that is the only view in which it can possibly be sustained, and hence an answer which states facts sufficient to defeat the title claimed by the appellants, is a good bar to the action.

We think, therefore, that the court did right in rendering a final judgment for the defendant, upon the plaintiffs refusing to reply to the third paragraph of the answer.

In this view of the case, the questions arising upon the demurrers to the second paragraph of the answer, and to the second reply to that paragraph, are rendered comparatively unimportant; as, if the ruling of the court upon either or both of those demurrers was erroneous, it would not reverse the judgment rendered upon demurrer to a good answer. The second paragraph of the answer is clearly good, even without the allegations contained in it in reference to the quit-claim deed to the defendant from *Anderson* and wife. It sets up the defendant's mortgage lien on the property, avers that he purchased the land at the sheriff's sale in good faith, for the purpose of protecting said mortgage lien, and expressly denies the fraud, collusion and combination charged in the complaint. These facts, if true, are sufficient to defeat the plaintiffs' action. The second reply to that paragraph, though assuming to avoid the whole, is directed alone to the quit-claim deed of *Anderson* and wife to the defendant. It was not a good reply to the paragraph, and the demurrer to it was therefore correctly sustained.

The judgment is affirmed, with costs.

*T. A. Hendricks, O. B. Hord, A. W. Hendricks, R. Hill,* and *J. S. Rogers,* for appellants.

*S. Stansifer, F. Winter, F. T. Hord* and *C. E. Walker,* for appellee.