HOUGLAND ET AL. *v.* THE STATE, EX REL. McCOOL.

REPLEVIN BAIL.—*Attestation by Justice of the Peace.*—An undertaking of replevin bail upon a judgment rendered by a justice of the peace is void, if not attested by the justice. DOWNEY, C. J., dissented.

CONSTABLE.—*Suit on Bond.*—In a suit upon the bond of a constable, where the only breach alleged is a failure to levy upon the property of the replevin bail, if the undertaking of replevin bail be void, there can be no recovery.

From the Warrick Common Pleas.

*A. Iglehart* and *J. E. Iglehart*, for appellants.

*I. S. Moore*, for appellee.

BUSKIRK, J.—The facts necessary to a proper understanding of the questions involved are these :

On the 6th day of December, 1868, McCool, the appellee, held a note against John L. Boner and William Boner as principals, and Thomas J. Hudspeth as surety, which was long past due, and William Boner had been dead for more than a year.   Notwithstanding these facts, he, on that day, obtained a judgment before Peter Seigel, justice of the peace, as upon the service of process, for the amount of the note and interest, less than two hundred dollars, against all the makers of the note.

Shortly after the rendition of this judgment, Washington M. Boner (sometimes in the record described as " Washington N." and sometimes as " Wash ") became replevin bail, according to the form of the statute, excepting that the name of the justice nowhere appears as attesting the bail. At the expiration of the stay, to wit, on the 22d day of June, 1869, an execution issued against all the judgment defendants, and against the replevin bail, in the alternative, in due form.   On the 28th day of July, 1869, Hudspeth filed in the court of common pleas of Warrick county a complaint for an injunction, setting forth that William Boner was dead before the rendition of the judgment; that McCool, without the consent of the plaintiff, had given time to John L. Boner, for a consideration, until John L. had become insolvent, and alleging that the judgment was rendered against plaintiff without service of process, and praying an injunction. Upon the filing of this complaint, a temporary restraining order was granted, and at the October term, 1869, a perpetual injunction was rendered.   Upon the default of the defendants, and after enjoining McCool and the justice, the decree reads, " and that Ben. Hougland be forever barred and inhibited from collecting an execution on said judgment."

Pending the injunction proceedings, Washington M. Boner had sufficient property to pay the execution, but whether

Hougland *et al. v.* The State, *ex rel.* McCool.

he ever had any more, or whether he had enough to pay it after the injunction, we think the record does not show.

Hougland failed to make the money upon the execution, and then suit was brought upon the constable's bond to recover the same. The suit was brought before a justice, where there was a judgment for the defendants, from which an appeal was taken to the circuit court.

There were three breaches of the bond filed, but two were withdrawn. The one left simply counts upon a failure to levy the execution upon the property of Wash Boner. And under this assignment proof is made, showing that while the execution was in the hands of Hougland, Wash Boner had property sufficient to satisfy the execution. Upon this the plaintiff claimed a right to recover the whole judgment, costs, and statutory damages.

On the other hand, the defendants insisted, 1st. That the replevin bail was void, and, therefore, the execution void. 2d. That the perpetual injunction of Hudspeth against collecting the judgment from him, even if the injunction is not broader, released the replevin bail, he having become the surety of Hudspeth as well as the others. And, 3d. That if McCool could collect anything, it would be only nominal damages, as the constable could not levy pending the injunction suit, and as Wash Boner was not shown to have any property after the term of the court at which the case was determined.

To sustain this view, the defendants put in evidence the record in the case of *Hudspeth* v. *McCool*, and proved the death of William Boner and the insolvency of John L. before the judgment; also, that Hudspeth is a man worth twenty-five thousand dollars or more, and that Wash Boner replevied the judgment for Boner and Hudspeth.

But the court found for the plaintiff, and assessed the damages at the full amount of execution, with ten per cent. damages thereon.

The defendants moved the court for a new trial, for the reasons, 1st, 2d, and 5th. The damages are excessive.

3d. The finding of the court is not sustained by sufficient evidence. 4th. The finding is contrary to law. But the court overruled the motion, and rendered final judgment. The proper exceptions were taken to the rulings upon which error is assigned.

The first and third assignments of errors are merely formal; the second, the overruling of the motion for a new trial, is relied upon solely.

Five questions arise upon the record here: 1st. Is the replevin bail, upon which the alleged liability of Wash. M. Boner upon the judgment against William Boner, John L. Boner, and Thomas J. Hudspeth is based, void, for want of the attestation of the justice of the entry of bail, in conformity with the terms of the statute? 2d. Admitting the entry of replevin bail to have been sufficient in the first instance, did not the fact that the judgment was void, for want of service of process or appearance of Hudspeth, as to him, alleged so by Hudspeth, and the allegation admitted by McCool by his default, also render the undertaking of the replevin bail void? 3d. Was not the replevin bail discharged by the injunction? 4th. Was not appellant Hougland, the constable, enjoined from the collection of the judgment upon execution? And, 5th. If the appellee was entitled to recover anything, did not the evidence confine his recovery to nominal damages.

Before proceeding to consider the questions stated, we will dispose of a question raised by counsel for appellee, and which is stated by counsel as follows:

"The first proposition is, that 'the entry or undertaking (of replevin bail), not being in substantial conformity with the statute, is void.' We submit that the question is not properly before the court, and ought not to be considered, because the proper objection was not made in the court below to the admission of the entry in evidence. The record shows that the justice's judgment, and the entry of replevin bail thereon, were read in evidence, as set out in the record, without objection. After showing such admis-

sion of the entry the record proceeds : ' And the plaintiff also read in evidence, by order of the court, over defendants ' objection and exception, the entry of replevin bail by Washington M. Boner.' To what did appellants' objection relate ? If to reading the entry in evidence the second time, surely the error, if error at all, was a harmless one. Concede, however, that the objection related to the admission of the entry in evidence in the first instance, then we say the objection was not well taken, for the reason that the grounds upon which it was based were not pointed out to the court at the time. *Clem* v. *Martin,* 34 Ind. 341, and the authorities there cited. We quote from the case in 34 Ind. : ' The objections must be pointed out and the attention of the court specially called to them at the time. The judge in the midst of a trial cannot be expected to delay the trial to hunt up the objections.' But there is a much stronger reason why this court will not review the action of the lower court on that point. Appellants did not embrace the ruling of the court complained of in their causes for a new trial. The *State, ex rel. Biddinger,* v. *Manly,* 15 Ind. 8 ; *Kent* v. *Lawson,* 12 Ind. 675 ; *Rosenbaum* v. *McThomas,* 34 Ind. 331. Having failed to do so, they waived the objection they may have desired to reserve. 12 Ind. and 34 Ind., *supra.*"

It seems to us that the learned counsel for appellee has misconceived the point relied upon by counsel for appellants. The appellants do not insist that the court erred in admitting in evidence the transcript of the judgment and the entry of replevin bail, but that, conceding that the evidence is properly in the record, the court erred in overruling the motion for a new trial, because such evidence shows that the entry of replevin bail was void for the want of the attestation of the justice of the peace. The point relied upon by counsel for appellant is, that there was such a failure of proof as required the granting of a new trial. We think that question is presented by the third reason for a new trial and the assignment of error, that the court erred in overruling the

motion for a new trial.   It will be observed that the admission in evidence of the transcript of the justice was not assigned as a reason for a new trial, and consequently can not be assigned for error here.   The breach of the bond assigned and relied upon is, that the officer failed to make the judgment by the levy and sale of the property of the replevin bail.   If the entry of the replevin bail was void for want of the attestation of the justice, or if the replevin bail was subsequently discharged, or if the constable was properly and legally enjoined from levying upon the property of such replevin bail until after he had become insolvent, it is manifest that there could be no recovery upon the bond of the officer for the breach assigned.   The first and most important question arising in the record is, did Washington M. Boner become legally bound as replevin bail?   It is not denied that Boner signed his name to the docket and acknowledged himself replevin bail, but it is contended that the attestation of the justice of the peace was necessary to the validity of such undertaking.

The statute, 2 G. & H. 602, sec. 84, provides, that the undertaking shall be substantially in the following form :

"I, A——— B———, hereby acknowledge myself replevin bail for the stay of execution, on the above judgment for——days from the rendition thereof.   Witness my hand, this——day of——, 18——.

"A—— B——.

"Test: E—— F——, J. P."

The following argument is made, on this point, by counsel for appellants :

"The undertaking in the case under consideration lacks the attestation of the justice.   The question then is, is this attestation form or substance?   We answer, substance.   The undertaking by the same section becomes a judgment confessed, and execution issues upon it jointly with the judgment of defendants.   This being true, the attestation of the justice is equivalent to his signature to his judgments, required by section 58 of the same act.   There it is simply

Hougland *et al. v.* The State, *ex rel.* McCool.

required that the judgment be 'entered and signed,' etc. Under this section, this court held, in *Ringle* v. *Weston*, 23 Ind. 588, that a justice's judgment, not signed by the justice, is void. So we see, in the one case, the section requires that a judgment shall be rendered and signed by the justice; and in the other, that an undertaking signed by the bail and attested by the justice shall have the effect of a judgment confessed.

" In the one case, this court holds that the absence of the signature renders it void; and certainly, *a fortiori*, if the signature is wanting in the other, it is equally void.

" The substantial points of the entry of bail are these: 1st. The acknowledgment of liability by the replevin bail. 2d. His signature, which serves as a binding obligation on his part. 3d. The attestation of the undertaking by the justice, that it may have the force of his official sanction as a record, 'a judgment confessed,' in the language of the statute.

" We are aware that it will be assumed that this provision is directory, the omission formal, and the objection technical.

" But this objection is fully met in *Galbraith* v. *Sidener*, 28 Ind. 142, wherein the effect of the failure to sign the record by the judge of the court of common pleas is discussed, and *Ringle* v. *Weston* is commented on and approved. But the case of *Cox* v. *Crippen*, 13 Mich. 502, is a case precisely in point, the statute being almost identical with ours. The case is ably argued by counsel, and briefs of points and authorities printed in the report of the case, and the question presented here is discussed by Judge COOLEY, with his acknowledged ability, and he reaches the conclusion, that the attestation is not merely formal, but is substantial; that the statute is not directory, merely, but peremptory; and that therefore the attestation and certificate are indispensable to the validity of the undertaking, and that their omission is fatal and the undertaking void.

"We leave this opinion without further comment, simply asking the court to examine the opinion of the court in that case, before deciding this. We adopt the argument of the opinion.

"Of course, if the undertaking was void, the execution issued was void as to the replevin bail, and the breaches assigned upon the constable's bond are not well assigned; or, more accurately speaking, they are not sustained by the evidence."

We have examined the case of *Cox* v. *Crippen, supra,* and find that it was under a statute "almost identical with ours." The case is directly in point. The court holds that the requirement of the statute, which makes it the duty of the justice to attest the replevin bail, is not directory merely, but peremptory and mandatory. The court say:

"It will be seen, on examination of the statute, that when this undertaking is entered upon the docket in due form, it is somewhat in the nature of a confession of judgment, and has the force and effect of a judgment without any other form or ceremony whatever. There is nothing in the statute which requires any intervention on the part of the justice in taking the stay, or which demands that it be in his presence, or be brought to his knowledge, unless the section quoted makes it necessary for him to attest the signature. He is not required to approve or accept it, if it is satisfactory to the judgment creditor; and as the docket of a justice is a public record, at all times open for proper entries, the parties to the judgment might enter the security in the absence, and without the knowledge, of the justice, as properly as in his presence, if his intervention is not required. No proof that the justice was actually present when this security was entered into can have any bearing, since, if he was required by law to attest it, his presence could not be regarded as a legal equivalent for attestation, and if not required to do so, it was wholly immaterial whether he was present or not.

"The consequences of a conclusion that the security need not be witnessed are so serious that we can not avoid

believing the Legislature regarded that act as something more than an idle ceremony. As the entry of the security has the force and effect of a judgment, a justice might be called upon to issue execution upon an instrument, of the genuineness of which he knew nothing, but where he would be required at his peril to take notice of the real facts, when they might be within the knowledge of a single person only, and that person unknown to him. Not only would the justice be thus placed in peril, but a false and forged instrument would at once, from the simple fact of being placed upon the docket, take upon itself the semblance of a judgment upon which officers would be required to act, so that a party might find his property seized in execution before he was aware of a claim.

" A statute under which such consequences could follow, or which should permit judgment to be taken without the intervention of any judicial officer, would be an anomaly. Judgments have never been allowed to be taken against parties upon their own confessions, or in any manner, except in pursuance of forms designed to afford complete protection against frauds or mistakes."

The reasoning of the court in the above case is sound and cogent. It seems to us that the undertaking of the replevin bail in the case in judgment was void for the want of the attestation of the justice. Inasmuch as the only breach of the bond relied upon was for the failure of the constable to levy upon the property of the replevin bail, it necessarily results, that there can be no recovery in this case on the evidence in the record. It is, therefore, unnecessary for us to examine the other questions discussed by counsel.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to grant a new trial, and for further proceedings in accordance with this opinion.

DOWNEY, C. J.—I regret that I can not assent to the opinion agreed upon by the majority of the court in this

case, so far as it holds the recognizance of replevin bail invalid, because it is not formally tested by the justice of the peace on whose docket it was entered.   The statute authorizing the stay of execution is set out in the above opinion of the court.   The judgment defendant is entitled to the stay, by entering replevin bail on the docket of the justice in substantially the form prescribed.   The entry is not required to be made in the form prescribed, but only substantially in that form.   The act to be done, to entitle the defendant to the stay, is an act which he is to do, by the "judgment defendant" "entering replevin bail."   If the defendant and his bail shall go to the justice of the peace, and the defendant, the bail, the justice, or any one else shall write out the recognizance on the docket, and the bail shall sign it, can there be any substantial reason why this shall not be valid?   The judgment defendant, the bail, and the justice intended that it should be a valid recognizance of replevin bail, and it contains all that the language of the section requires, unless it be the word "test," and the name and official designation of the justice of the peace by the use of the word "justice."   The majority of the court decide this point mainly on the authority of *Cox* v. *Crippen*, 13 Mich. 502.   I think that case ought not to be followed. It throws away the substance for a mere form, without any sufficient reason for so doing.   In that case the recognizance had been entered and signed by the bail in exact conformity to the statutory form, and the justice of the peace had written following it, "I approve of Warren S. Crippen as stay.   B. Bennett, J. P."   This was held by that learned and reputable tribunal as not being equivalent to the word "test," and for the want of a formal attestation by the justice of the peace, the recognizance of replevin bail was held invalid.   One would suppose that very substantial and forcible reasons would have to be shown for thus setting aside an act so completely in substantial conformity to the statute.   But what are the reasons?   The court talks about serious consequences flowing from allow-

ing such an act to be treated as binding and valid. The justice of the peace, the court says, might be called upon to issue an execution on the recognizance of replevin bail, "of the genuineness of which he knew nothing, but when he would be required at his peril to take notice of the real facts, when they might be within the knowledge of a single person only, and that person unknown to him. Not only would the justice be thus placed in peril, but a false and forged instrument would at once, from the simple fact of being placed upon the docket, take upon itself the semblance of a judgment upon which officers would be required to act, so that a party might find his property seized in execution before he was aware of a claim." This whole argument, and the whole ground of the fears of the serious consequences to result from sustaining a recognizance of replevin bail not tested by the justice of the peace in due form, grows out of the supposition that some one will forge an entry of replevin bail on the docket of the justice of the peace. If that shall not be done, then none of the dreaded consequences will follow. I suggest that a position which rests only upon the supposition that some one will forge a recognizance of replevin bail can not be very well founded. Even this objection to such a practice would seem to have had no foundation in the Michigan case, any more than in the case under consideration; since there the justice of the peace, under his own hand, approved the entry of bail. But that court suppose that " a party might find his property seized in execution before he was aware of a claim." If this should happen, which could never be the case until some one had first forged an entry of replevin bail against the party, it is not perceived that there could be any great difficulty in the case.

I am confirmed in my opinion that the formal testing of the entry by the justice is not of the substance of the transaction, from the fact that no such formality is required in the entry of replevin bail in the higher courts of record in this State. By reference to sec. 421, p. 234, 2 G. & H., it will

be seen that the clerk is required to take and approve the bail, but no entry of the fact of approval or any testing of it is required of him.   The statute simply requires that "the recognizance shall be written immediately following the entry of the judgment, and signed by the bail." And by reference to sec. 424, on the succeeding page, it will be found that in cases where a stay of execution may be had, after the execution has issued, it is done "by putting in bail to be approved by the sheriff, and indorsed thereon, and signed by the bail." It is urged that as the statute requires the justice of the peace to sign his judgment, this is a reason why he should attest the entry of bail.   I think differently.   There is no one but the justice to sign the judgment.   Judgments in the higher courts are required to be read and signed in open court, and yet the recognizance of replevin bail of such judgments need not be attested, or signed by any one except the bail.   Ought it to be presumed that the legislature would have been so careful as to have the entry authenticated by the testing of it by the justice of the peace to make it valid, when entered before him in cases of small import, and yet wholly omit any such formality when the bail is entered in the clerk's office, where the amounts are generally so much greater?   If there is danger of forgery from the lack of a formal attestation, by the clerk, of the entry, there would seem to be an open field.   If the clerk is to be embarrassed when he comes to issue an execution against the bail for want of a formal testing by him of the entry, the floodgate is here left wide open.   If there is danger that some one's property may be seized in execution before he has had any notice of the claim, numerous instances of such seizure might be expected to occur.   But who has ever heard of any of these forgeries, embarrassments, and seizures, from any such cause?   It is stated in the opinion of the majority of the court, and shown by the record, that it was not denied that Boner signed his name to the docket and acknowledged himself replevin bail, but it was contended that this formal attestation was essential to make

it valid. This shows that, in this case, there is no uncertainty as to the recognizance having been entered into by the bail, no danger of any forgery, no embarrassment in issuing the execution, and no danger of the property of Boner being seized before he has any notice of a claim against him. I cannot agree to a construction of the section in question which will have the effect in this case, as in almost all others, as I am persuaded, to release a man from an obligation into which he has solemnly entered with a full knowledge of the liability which he was assuming, and where every consideration of justice and proper interpretation of the law requires that he should be held liable.