Forcheimer v. Holly.

ABRAM FORCHEIMER VS. ELI P. HOLLY.

1. A defendant, by availing himself of the leave of the court to amend answers which have been pronounced insufficient in law upon demurrer, elects to change his defences, and the sufficiency of the original answer as a defence to the action is not brought up for review by this court upon an appeal from a final judgment rendered for the plaintiff upon the amended answer.

2. That the return fails to disclose any issues of fact or law upon the amended answer thus filed will not be sufficient cause to reverse the judgment where the matters set up in the amended answer are not sufficient answers to the complaint, and the judgment will be affirmed if there is no error in other respects.

3. That the consideration for a contract was Confederate notes does not render the contract illegal. Such notes had an actual value, were a good and legal consideration for an ordinary commercial contract, and in the absence of any actual intent or purpose to aid the persons resisting the authority of the United States, the contract should be enforced by the courts to the extent of its just obligation.

4. The Constitution of this State provides that " all notes given in consideration of treasury notes of the so-called Confederate States are hereby declared null and void, and no action shall be maintained thereon in the courts of this State.". This clause, impairing the obligation of a contract, and being an attempt upon the part of the State to exercise

a power which is prohibited by the express limitations of the Constitution of the United States, the supreme law, is void.

5. The general government being powerless to regulate the course of justice and prescribe rules of evidence in the State courts, Congress cannot constitutionally require that contracts shall be stamped as a condition precedent to their being admissible as evidence in the State courts.

6. A plea setting up a tender of Confederate notes during the war is available for no purpose.

7. When a tender is pleaded in bar of the action, the want of a *profert in curia* of the money tendered is fatal.

This is an appeal from a judgment rendered in the Circuit Court of the First Judicial Circuit in Santa Rosa county.

A statement of the case is contained in the opinion of the court.

*John Chain* for Appellant.

*Geo. G. Mc Whorter* for Respondent.

WESTCOTT, J., delivered the opinion of the court.

This was an action by the payee against the maker of the following promissory note:

$500.                      MOBILE, MARCH 23d, 1864.

One day after date I promise to pay to A. Forcheimer, or order, five hundred dollars, value received. Negotiable and payable at the Mobile Savings' Bank.

E. P. HOLLY.

To the complaint describing this note as the cause of action, the defendant, Holly, filed two distinct answers—one consisting of five grounds of defence—the other of two. The plaintiff, Forcheimer, demurred to each of the answers and to the several matters of defence therein set up. This demurrer the court sustained, with leave to defendant to file an amended answer instanter. The defendant availed himself of this leave, and filed an amended answer. The order

of the court sustaining this demurrer is the first error assigned here by the appellant.

The defendant, by amending his answer, elected to change his defence and not to rely upon matters set up in his first answer. · If it was his desire to rest his case upon these defences, he should not have availed himself of leave to amend them. He should have submitted to a final judgment, and on appeal from that judgment all the questions raised by the demurrer would have been presented to this court. When a pleading under the circumstances here disclosed is amended, the original pleading ceases to be a part of the record, because the party has elected to make the change. 18 New York, 496. Plaintiff's demurrer being thus sustained, with leave to defendant to amend, he filed an amended answer. The return now before the court shows neither a reply, which in some cases may be required, (Code, Section 103,) nor demurrer to this amended answer, the entries following the amended answer being a verdict of the jury for the the plaintiff and a judgment in his favor for the amount of the verdict. The following memorandum attested by the judge presents the only questions involving a consideration of the testimony and arising upon the trial, which we can consider :

" In this case, plaintiff offered as evidence an unstamped note for five hundred dollars, given by defendant to plaintiff, to the admission of which defendant objected as forbidden by act of Congress. The court held that Congress could not prescribe rules of evidence for State courts, and admit the note as evidence. To which ruling the defendant excepted. The defendant offered to prove that since the close of the war he had offered to pay said note in legal United States currency, at a specified rate as compared with Confederate currency, which plaintiff refused to accept, but the witness being questioned by the court as to any actual proffer of money by the defendant, stated that there had been no such proffer. The court held that the proposed evidence

was inadmissible to show a legal tender. To which ruling the defendant excepted."

These rulings being excepted to, are assigned here as error. The act of Congress fixing stamp duties enacts that such a contract as this note shall not be used as evidence in any court, until a legal stamp denoting the amount of tax shall have been affixed thereto as prescribed by law. Some of the courts hold that this act, not applying in terms to the courts of the several States, can have full operation if it is construed to apply to those courts only which have been established under the Constitution of the United States by acts of Congress. Thus construing the act, they hold that it does not relate to the State courts. Some State courts have sustained the act in its broadest construction, while others, admitting that its language and intent embraces State as well as Federal courts, deny the power of Congress thus to prescribe rules of evidence to govern the State courts, holding that the general government is as powerless to regulate the course of justice and rules of evidence in the State courts as the State courts are powerless to interfere with the subjects and rights exclusively confided to the courts of the United States, and that neither can thus interfere with the course of justice in the courts of the other. 45 Ill. 29; 97 Mass. 452; 1 Bush., 239.

Our views are expressed by the Supreme Court of Illinois, when disposing of the same question in a case before it. That court says, " If our system of government is to remain as the wise and good men fashioned it, a strictly federative system, the States sovereign over all subjects within their proper sphere of action as the general government is over all subjects confided to it by the Constitution, then no power exists in Congress to declare by law what shall or shall not be evidence in a State court, and what domestic contracts made by the people of the States in virtue of their own laws, and having no connection with the Federal gov-

ernment, shall be valid." 45 Ill. 30. There was no error in admitting the note without a stamp.

As to the other ruling assigned for error, the witness admitted that there was no actual proffer of the money. What occurred was simply a proposition to pay what defendant thought he should pay. This is the evidence as stated by the judge.

The plea under which this evidence was offered was available for no purpose, as it was not accompanied with a *profert in curia* of the money. Where there is no profert, a plaintiff, even after issue and verdict for defendant, would be entitled to judgment *non obstante veredicto*.

What we have said disposes of everything occurring in the trial which this record presents for our consideration. This case and exceptions verified by the judge and just considered, and the final judgment upon the verdict, are the only actual *determinations* by the court which this return presents. This record shows neither issues of fact nor law upon the several defences set up in the amended answer. There is neither reply nor demurrer to it, and yet there is a general verdict of the jury upon issues of some kind which they considered.

Under the Code there are cases in which neither a reply nor demurrer is necessary. Whether in this case either was essential we do not determine, as in the view we take of the case, it is not necessary to decide that question. If the matters set up in this amended answer amount to no defence, it is plain that the judgment should be affirmed here. It certainly cannot be correct practice to send a case back to try issues either of law or fact which can amount to nothing, and when the only result can be an affirmance of the judgment now in the return before us. With this view, we examine very briefly the several matters of defence set up in this amended answer. The first defence is that the note was made by the defendant and delivered to the plaintiff in the State of Alabama, where the contract was made, and

where the consideration for which it was so made and delivered was at the time, and where the said plaintiff and defendant were then domiciled, and where the defendant has ever since resided and is now residing. These facts constitute no defence to the action.

The second defence is that the consideration for which the note was given was Confederate Treasury Notes, and that the note described in the complaint was to be paid in the same notes. There have been two conventions of the people of this State since May, 1865. Each convention passed ordinances or inserted provisions in the State Constitution in reference to contracts of this character. The first convention passed " an ordinance in reference to contracts made during the late war," which authorized proof to be admitted as to the character and value of the consideration in such contracts, and directed the courts to instruct juries to find according to the proof in this respect. This ordinance has been sustained by this court in one case and construed in another, (11 Fla. 292. 12 Fla, 532,) and while I am now and always have been of the opinion that it in effect destroyed the contract of the parties and made a new one, directing as it did that the party holding the obligation should receive *what a jury thought was the value of the consideration* which he had received, instead of the amount, or value of the amount, fixed and agreed *upon by the parties themselves*, yet it has been sustained and construed by this court as before stated, and the matter is not now an open question. The second convention inserted a section in the State Constitution which provided that all notes given in consideration of treasury notes of the Confederate States, " are hereby declared null and void, and no action shall be maintained thereon in the courts of this State." The Constitution having previously vested jurisdiction of this class of contracts in the Circuit Courts, a consistent construction of the jurisdiction clause, and this clause, requires us to hold that the terms, " no action shall be maintained," relate to the right

of action in the party, and not to the jurisdiction of the court to hear and determine the action; that it is an attempt by the convention by virtue of its conceived power over the right of action in the party to destroy that right.

If this provision of the present State Constitution is in conflict with the limitations upon the power of a State, contained in the Constitution of the United States in reference to contracts, it is void, and the rule left to determine the rights of the parties is that prescribed by the previous convention, as interpreted and sanctioned by the courts. If the fact that the consideration upon which this contract was based was a loan of Confederate notes, did not render the note void and destroy the right of action in the payee thereof anterior to this action of the State Convention, but on the contrary the law gave him the right to enforce the contract, then this clause of the Constitution denying the right of action upon this note impairs its obligation and is void. Does the fact that the consideration for this note was Confederate notes render the contract illegal? Does the simple fact of the parties thus dealing in these notes and accepting them as a consideration for a contract render such contract an illegal contract, which the courts should not enforce?

Confederate notes during the war were the only medium of exchange or representative of values then in general use by the people inhabiting a large portion of the country. Having an actual value, and being available as a medium of exchange, there can be no objection to sustaining contracts based upon them, unless the facts attending the issue and use of these notes render the contract illegal and void. We think this question is settled by the reasoning and the principles established in the case of Thorington vs. Smith, lately decided by the Supreme Court of the United States. (8 Wall., 11.) The court, in that case, says, " While the war lasted, these notes had a certain contingent value, and were used as money in nearly all the business transactions of many millions of people. Contracts stipulating for payment in this

currency were transactions in the ordinary course of civil society, and though they may have indirectly and remotely promoted the ends of the unlawful government, yet if entered into without any actual intent to further invasion or insurrection, were such contracts as should be enforced to the extent of their just obligation."

The precise question raised in the case now before the court is the legality of a contract where the value received, as the consideration for its obligation, is Confederate notes. It is not pretended that the making of this note was anything more than an ordinary commercial transaction, or that the contract was entered into with any actual intent to promote insurrection or invasion. According to the reasoning of the case just referred to, and in perfect accord with the plainest principles of natural justice, we cannot hold otherwise than that the consideration was lawful, being a thing of value capable of use and exchange for commercial commodities, and that the contract was legal and of binding force, no actual intent to aid invasion or insurrection being entertained by either of the parties. This clause in the Constitution, which attempts to destroy the binding force and obligation of this contract, is therefore void, and the rights of the parties are such as were fixed by the ordinance of the convention of 1865, before referred to.

In this case we must presume that the provisions of that ordinance were enforced, and that the judgment in this respect is correct and in conformity to the law of the contract as fixed by the previous decisions of this court. The judgment is regular, and no portion of the testimony which is verified by the judge shows that any other rule was applied.

The third defence in the amended answer sets up a tender of Confederate notes during the war. These notes were never a legal tender in contracts between individuals under the regulations prescribed by the powers actually occupying the territory in which they were a medium of exchange, nor

Forcheimer v. Holly.

have they occupied any such position under the laws of the United States.

The fourth and last defence sets up a tender of United States currency since the war. The plea of tender here is in bar of the action. It is not pleaded with a *profert in curia* of the money. This omission is fatal. 17 Mass. 392.; 1 Fla. 319.

The judgment is affirmed, with costs.