Cleland v. Hostetter.

[No. 1036, February 24, 1905.]

A W. CLELAND, Jr., Appellant, v. LOUIS HOSTET-
TER, et al., Appellees.

SYLLABUS.

1. Grounds of demurrer to a reply not set up in the
court below, cannot be considered in this court.

2. Letters written by a debtor to the attorney for the
creditor, in which referring to the note sued on, the debtor
says: "Will pay as soon as I can" and in which after offering
to pay one hundred dollars in compromise he adds: "It's
that or wait until I get it," constitute a sufficient admission
that the debt is unpaid to revive the cause of action under
C. L. Sec. 2926.

Appeal from the district court of Bernalillo county,
before BENJAMIN S. BAKER, Associate Justice. Affirmed.

W. B. CHILDERS and E. L. MEDLER, for appellant.

Causes of action founded upon contract shall be re-
vived by an admission that the debt is unpaid, as well
as by a new promise to pay the same, but such admission
or new promise must be in writing, signed by the party
to be charged therewith.

Sec. 2926, Compiled Laws of New Mex.
1897; Bullard v. Lopez, 7 N. M. 563; Ray-
mond v. Newcomb, 10 N. M. 173.

Such admission need not be couched in precise and
direct terms but it is sufficient if it show with reasonable
certainty that the debt is unpaid.

Nelson v. Hanson, 60 N. W. (Iowa) 656;
Penley v. Waterhouse, 3 Iowa, 441; Palmer v.
Butler, 36 Iowa, 581; Wise v. Adair, 50 Iowa,
104; Bayliss v. Street, 51 Iowa, 627; Bank
v. Woodman, 62 N. W. 28, Iowa; see also Wise
v. Adair, (supra.) 50 Iowa, 104; Stout v.
Marshall, 75 Iowa, 498; 39 N. W. 808; Miller
v. Beardsley, 81 Iowa, 720; 35 N. W. 756.
Raymond v. Newcomb, 10 N. M. 175; Man-
chester v. Braender (N. Y. App.) 14 N. E.
405; Nelson v. Hanson, 60 N. W. 656.

Cleland v. Hostetter.

Promise by the debtor to pay a claim "as soon as possible" or "as soon as he could" and others of a similar character have been held sufficient as admissions "of the debt."

> Norton v. Shepard, 48 Conn., 141; Butterfield v. Jacobs, 15 N. H. 140; Society v. Miller, Id. 520; Custy v. Dolan (Mass.) 34 N. E. 360; Chidsey v. Powell, 91 Mo., 625; 4 S. W. 446; Devereaux v. Henry, 16 Neb. 55; 19 N. W. 697; Hartranft's Estate (Pa. Sup.) 27 Atl. 104; Bernard v. Bartholomew, 22 Peck., 291; Cummings v. Gassett, 19 Vt. 308; Walsh v. Mayer, 111 U. S. 21; 4 Sup. Ct. 260.

A payment of interest in connection with a statement that "it is" on my note" is held sufficient as an admission.

> Jenks v. Rice, 93 N. W. Rep. (Iowa), 384; Bullard v. Lopez, 7 N. M., 561; Armijo v. Armijo, 4 N. M. 65; Ayer v. Bane, 39 Iowa, 519; Mahon v. Cooley, 36 Iowa, 182; Stewart v. McFarland, 84 Iowa, 55; Koons v. Vanconsant, 88 N. W. (Mich.) 630.

J. F. BONHAM and F. W. CLANCY, for appellees.

The Iowa cases decided before 1880, are none of them in conflict with Penley v. Waterhouse, 3 Iowa, 436-442, which simply declares the common law on the question.

> Collins v. Bane, 34 Iowa, 389; Mahone v. Cooley, 36 Iowa, 482; Wise v. Adair, 50 Iowa, 104; Bayliss v. Street, 51 Iowa, 627-8.

"I cannot pay the debt at present, but I will pay it as soon as I can" was held not sufficient to remove the bar of the statute of limitations.

> Tanner v. Smart, 6 B. & C., 604; Tompkins v. Brown; 1 Denio 248; Bedwell v. Rogers, 10 Allen, 438.

Conditional promises not sufficient.

> Wood on Limitations, Sec. 77; Buswell on Limitations, p. 79; Millers heirs v. McIntyre, 6 Pet. 64; see also Bell v. Morrison, 1 Pet. 361; Moore v. Bank 6 Pet. 91; Clem-

Cleland v. Hostetter.

entson v. Wiliams, 8 Cranch, 74; Ft. Scott v. Hickman, 112 U. S. 162.

## OPINION OF THE COURT.

POPE, J.—This is a suit instituted in the district court of the county of Bernalillo on February 2, 1903, based upon a promissory note signed by the defendant Louis Hostetter, and made payable to the order of the plaintiff. Defendants answered setting up the statute of limitations of six years. Whereupon plaintiff filed his reply setting up the following letter as taking the case out of the statute:

"Las Cruces, N. M., November 27, 1901.
"E. L. MEDLER, Esq., Albuquerque.

"Friend E.—Your letter to hand you can tell Mr. Cleland as I told you, as soon as I get some money I have been expecting I will pay him. I did not get the money I had every reason to expect and so did not settle. as for suit, why you would not make anything as it is not only outlawed, but I have nothing you can touch even if it was not outlawed, but I do not wish to evade the payment and so will pay when I can.

"Yours truly,
"LOUIS HOSTETTER."

To this reply the defendant's demurred upon the ground that "the alleged promise in writing of which a copy is filed with said reply shows upon its face that it is no promise whatever to pay the alleged indebtedness upon which this action is founded, nor is it any such admission that the debt is unpaid as will raise an implicaton of such a promise."

This demurrer having been sustained an amended reply was filed as follows:

### "AMENDED REPLY."

"Now comes the plaintiff, by W. B. Childers, his attorney, and files this his amended reply to the answer of the defendants, and says:

"1. That although the said note set up in said amended complaint was dated more than six years last past, and became due and payable more than six years

before the bringing of this suit, yet the said defendant
Louis Hostetter, within six years prior to the filing of
this suit, by admission in writing, admitted that the debt
evidenced by said promissory note was unpaid, and prom-
ised to pay the same, a copy of which said writings are in
words and figures, as follows:

" 'Las Cruces, New Mexico, 8-21, 1899.

" 'Friend Ed.—Yours from Childers & D. to hand, if
you recollect I told you I expected to be paid some money
and I have never gotten it as yet. I will see what can
be done and let you know. Will pay as soon as I can.

" 'Yours truly,

(Signed)                          " 'LOUIS HOSTETTER,'

" 'Las Cruces, N. M., December 4, 1901.
" 'E. L. MEDLER, Esq., Albuquerque.

" 'Dear S.—Yours to hand and I will not give Mr.
Cleland a new note and you can sue if you desire, all the
good it would do you even if you got a judgment. It is
outlawed all the same whether I acknowledge ever owing
it or not, but I have no idea doing him although, but
never mind, what I will do is I will borrow money and
pay him $100.00, $25.00 cash and $10.00 a month until
paid and its that or wait until I get it.

" 'Yours truly,

(Signed)                          " 'LOUIS HOSTETTER.'

"And plaintiff further alleges that at the time of said
admission and promises, the said E. L. Medler, was acting
as the attorney and agent of the plaintiff."

To this amended reply defendants demurred in the
same language as in the demurrer to the original reply,
which demurrer was sustained. Plaintiff declined to plead
further, judgment was rendered in favor of the defendants
and plaintiff appealed to this court.

The amended reply does not reiterate or adopt by ref-
erence as a part thereof, the letter of November 27, 1901,
set up in the original reply. By filing his amended reply
in this form plaintiff would seem to have waived his right
to allege error in the ruling on the demurrer to the original
reply. Gale v. Tuelumne Co., 14 Cal. 25; Kennedy v.
Anderson, 28 Ind. 151; Forcheimer v. Holley, 14 Fla.
239; Gale v. James, 11 Colo. 540; Gale v. Foss, 47 Mo.

Cleland v. Hostetter.

276; State v. Simpkins, 77 Ia. 676; 1 A. & E. Enc. of P. & P., pp. 624-626, and cases cited. We do not find it necessary to decide this, however, as in the view which we take of the case, the letter of November 27, 1901, can be disregarded without affecting the result, and we shall confine ourselves in the consideration of this case to determining the sufficiency of the amended reply, which sets up the letters of August 21st, 1899, and December 4th, 1901.

It is urged by the appellees that the amended reply is not sufficient to obviate the bar of the statute, and the grounds specially presented in the brief as sustaining that position are: *First,* that there is no allegation in the amended reply that the two letters pleaded refer to the note sued on; *second,* that assuming that they do, they do not constitute a promise to pay, or any admission raising the implication of a promise; *third,* that even assuming that the letters amount to a promise to pay "as soon as the debtor can," such promise is conditional, and there being no allegation of the ability of Hostetter to pay, the reply is insufficient.

We are of opinion that the first objection to the amended reply must be overruled for the reason that it was not made in the court below. The demurrer in the court below, was confined in terms to the objection that the letters pleaded showed upon their face that they were neither promises nor admissions within the terms of the statute. That is a very different objection from the contention made for the first time that there is nothing in the reply to tie these letters to the debt sued on. Had this point been made in the court below, plaintiff could doubtless have amended to meet the objection. In declining to entertain this objection we simply follow the well recognized rule that, objections of this character cannot be considered on appeal unless made in the court below. Code Sec. 36; C. L. 3139; Crabtree v. Segrist, 3 N. M. 495; Coleman v. Bell, 4 N. M. 421; Tex. etc. Ry. Co. v. Saxton, 7 N. M. 302; Neher v. Armijo, 66 Pac. (N. M.) 519. We may add further, however, that had the point been made in the court below, the trial court would, in our opinion, have been amply justified in holding the alle-

gation that "the said defendant Louis Hostetter, by admissions in writing x x x admitted that the debt evidenced by said promissory note was unpaid and promised to pay the same," to be a sufficient averment that the writings which follow in the pleading have reference to the note in question.

Coming now to the other grounds urged by the appellees, are the two letters set up in the amended reply sufficient to toll the statute? The statute (C. L. Sec. 2926) provides that "causes of action founded upon contract shall be revived by an admission that the debt is unpaid as well as by a new promise to pay the same," such admission or new promise to be "in writing signed by the party to be charged therewith." We have had occasion recently in the well considered case of Reymond v. Newcomb, 10 N. M. 151, to point out the fact that our statute of limitations is taken from the state of Iowa. In that case this court reviewed the various Iowa decisions and held that the words "I shall sell our cattle the first chance. I am tired of the business and want to pay off that mortgage," were sufficiently clear and unqualified to constitute an admission that the debt secured by the mortgage was unpaid. The language here used is in our judgment an admission equally clear and unqualified. The effect of the letter of August 21, 1899 is, that the defendant says he has received a letter from the attorneys representing the plaintiff, that as he had previously told them, he had expected to be paid some money which he had never gotten, but that he would see what could be done and let counsel know. He then adds: "Will pay as soon as I can." We are unable to see in what respect this letter falls short of an admission that the debt was unpaid. The debtor acknowledges the receipt of the letter as to this debt, he in effect accounts for his failure to attend to the matter sooner on the ground that some money he expected had never been received. He says he will see what can be done and let counsel know. He promises to pay as soon as he can. These statements are inconsistent with any other theory than that he admits that the debt is just and unpaid and proposes to pay it as soon as he can. This letter is complete in itself, and even if the later letter—of De-

cember 4, 1901, be considered a modification of his former position, that cannot destroy the effect of his first admission. We are of opinion, however, that this letter does not evidence any recession from his former position, that the debt is unpaid. True, he declines to give a new note and indicates that if judgment were secured on the original claim he is execution proof. True, he further states that the claim is "outlawed," whether he "acknowledged ever owing it or not," but he expressly repudiates the idea that he has any intention of "doing" the creditor. On the contrary he offers to settle for one hundred dollars and says, "It's that or wait until I get it." This language is susceptible in our judgment of only one interpretation. The debtor by it in effect says: I owe your claim, it is outlawed; however, I don't propose to "do" you *i. e.* rely on the statute of limitations or any other technical defense; I'll make you this proposition, I'll pay you a hundred dollars to settle the matter; you can take that, or if you don't, you'll have to wait for your money *"until I get it."* This letter as we view it, equally with the first acknowledges a present subsisting debt.

It is claimed, however, that even if either or both letters be construed as an admission that the debt is unpaid, the admission is accompanied with a condition that the plaintiff will be paid when Hostetter "can pay," when "he gets the money." The contention apparently is that these letters are tantamount simply to a promise to pay upon a certain condition *i. e.* ability to pay, and that there is no allegation of the realization of that condition. We are aware that there are a large number of authorities which hold that a promise to pay when the debtor "can," is of no avail as an acknowledgment of the debt unless accompanied by proof of the financial ability of the debtor. It will be found, however, that these are authorities either declaring the common law, or construing American statutes declaratory of the common law. They must be read in the light of the fact that the statute of 21 James I. which had been declared by this court in Browning v. Browning, 3 N. M. 659, to be a part of the common law as imported into this Territory and which is the original English statute of limitations,

Cleland v. Hostetter.

contains no provision whatever as to the revival of a
cause of action by acknowledgment of new promise. That
statute is confined to prescribing simply the statutory
period barring the several classes of action. Wood on
Limitation (1st Ed.) p. 631; Angel on Limitation (2nd
Ed.) Appendix p. 3; 19 A. & E. En. of Law (2nd Ed.)
p. 288. After its enactment in 1623, however, the ques-
tion of the effect of a new promise upon the bar in cer-
tain suits upon contract came before the English courts,
resulting in the holding by those courts, *first,* that a new
promise tolled the statute, *second,* that an acknowledg-
ment furnishing the implication of a promise had that
effect, and third, that part payment furnishing a like
implication also had that effect. Parsons v. Corey, 28
Ia. 431; Wood on Limitations (3rd Ed.) Secs. 64 and
96. The rule rested upon the theory that in each instance
the new promise created a new cause of action upon which
the plaintiff might declare without relying upon the orig-
inal claim, the latter being material only as furnishing
the consideration for the new agreement, 19 A. & E. Ency.
of Law (2nd Ed.) 288, and Wood on Limitations (3rd
Ed.) Sec. 68. The essence of the doctrine being the new
promise, it followed that an acknowledgment sufficient
to revive the action must under 21 James I. amount to a
new promise, and that a conditional acknowledgment as,
for example, a promise to pay when the debtor is able, was
ineffectual until condition fulfilled. It thus resulted that
the English authorities as well as those American jurisdic-
tions which have statutes declaratory of the English de-
cisions construing 21 James I. have generally, bearing in
mind that a promise either express or implied lies at the
very basis of the rule, held that a conditional promise is
ineffectual even as an acknowledgment, unless accom-
panied by proof of the performance of the condition; and
this would probably be held to be the rule in this Terri-
tory but for the fact that the legislature by act of 1880,
compiled as section 2926, found it necessary to limit the
effect of 21 James I. and the English decisions construi-
ing it, just as Parliament in 1828 found it necessary by
the act of 9 George IV., likewise to impose limitations.
By section 2926 the legislature of this Territory not only

provided that the acknowledgment or new promise must be in writing signed by the debtor, but also defined the extent of the acknowledgment necessary, to-wit, that it should be "an admission that the debt is unpaid." In both of these respects it changes the English law as it existed at the date of the American independence. Before proceeding, however, to consider the authorities which construe statutes similar to our own, we may add that even in this jurisdiction where the common law (and by common law we use the term as defined in Browning v. Browning, *supra,* and as meaning the statute of James and the English authorities construing it up to the American independence) still exists or has been as to this subject practically re-enacted, there are to be found a number of highly respectable authorities holding that a statement (such as in this case) that the debtor will pay when he can, is valid as a promise even without proof of ability. Thus, in New Hampshire it has been held that the word *"can"* as thus used is too indefinite to constitute a condition and that the promise to pay when the debtor "can" is an absolute promise. A distinction was drawn in that case between the words "when I shall be able," which is a condition susceptible of being proved as a matter of fact and "when I can" which is indefinite. As was said by the court in Butterfield v. Jacobs, 15 N. H. 142:

"The word *can* is indefinite. For aught that appears in the case the defendant may have been a man of wealth and yet he might not have had the money at his immediate disposal with which to pay this debt. And yet he may have been of sufficient pecuniary ability. * * * The defendant contends that the promise was conditional and that the plaintiff cannot recover because there is no proof that the contingency has happened. But we are of opinion that the words following the promise to pay are too uncertain and indefinite to constitute a condition and that the promise to pay was absolute."

So in First Cong. Soc. v. Miller, 15 N. H. 520, it was said:

"In the present case the defendant said he had not the money but would pay as soon as he could. This was not a conditional promise, which is a promise to pay on,

the happening of a certain event, and there was no event to which the words looked forward. The words following the promise to pay are too uncertain and indefinite to constitute a condition."

So in Connecticut, another state governed by the common law in this respect, it has been held, upon a full review of the authorities, that the words "I will pay them" (referring to the debts) "as soon as possible," constitute an acknowledgment equivalent to an unconditional promise and take the case out of the statute of limitations. Thus it is said in Morton v. Shepard, 48 Conn. 141:

"It seems to us that the words 'as soon as possible' are too uncertain and indefinite to amount to a condition. They do not point to any future event capable of proof. It is said they mean as soon as I am able. This would not help the matter unless we assume that general financial ability is intended, which might be susceptible of proof. But neither the words nor the context require this restricted meaning. If the debtor should have insufficient property to pay all his debts, it would not follow that it was not possible to pay the debt in question. He might do so perhaps by borrowing the money, by some friendly aid or by his future earnings. The words do not necessarily imply poverty in the promisor; they might with equal propriety be used by a man of wealth, who at the time had no money on hand but who had debts of large amount due him, or who had other estate not at his immediate disposal. What would be possible for one to accomplish must be exceedingly difficult of proof because it must depend so much on his own exertions. * * * So that if the promise in question was to be considered express we should incline to hold it unconditional. But the language may be construed as an acknowledgment of the defendant's indebtedness to the plaintiff and as such it clearly admits the continued existence of the debt and implies a willingness and even a positive intention to pay it, and the words "as soon as possible" do not really restrict or limit the meaning and force of the acknowledgment. On the other hand they are strong words, implying a lively consciousness of obligation and an earnest purpose to pay the debt." In Vermont a promise to pay "as soon as

he could" was held in Cummings v. Gassett, 19 Vt. 308, sufficient to take the case out of the statute; and in Illinois a promise to pay when the debtor "made a raise" was given like effect. (Horner v. Starkey, 27 Ill. 13.)

Whatever may be the diversity of opinions, however, among the states which have adhered to the common law language defining what shall be sufficient to toll the statute, we are of opinion that the statute of this Territory does not stand on the footing of the older jurisdictions and that the rules there applicable are not binding here. Unlike the Statute of James, our statute in terms provides that either a new promise or an acknowledgment may revive the action; and not content with leaving to uncertainty or to diversity of authority the scope of the acknowledgment necessary to toll the statute, it in terms provides that "an admission that the debt is unpaid" shall have that effect. This very explicit statutory declaration limits the field of authority applicable and renders it unnecessary to discriminate between the two lines interpreting the common law. The Territory of New Mexico in respect to this statute belongs to a group of jurisdictions wherein the common law rule has been modified. Other members of this group are Iowa, from which state our statute is copied, and Nebraska and Kansas, in which "an acknowledgment in writing of an existing debt or claim" *.* * takes the claim out of the statute. This difference in the statutes of the several states, is pointed out in 19 A. & En. Ency. of Law (2nd Ed.) p. 297, where it is said, citing the Nebraska and Kansas statutes:

"By statute in several jurisdictions it is not necesary that the acknowledgment shall imply a promise to pay; an admission of the debt as an existing liability is sufficient even though it is accompanied by words which repel any implication of such a promise."

Turning to the authorities of this group of jurisdictions, the case of Devereaux v. Henry, 16 Neb. 56, was one in which the language was: "If ever I get able I will pay every dollar I owe to you and all the rest. You can tell all as soon as I get anything to pay with I will pay. As for giving a note it is of no use. I will pay just as

quick without a note as with it." It was said by the
supreme court of Nebraska in that case:

"The plaintiff in error has cited a number of authori-
ties, but we think they are not applicable to this case, nor
do we believe any can be found which are directly in
point, the difficulty being that he loses sight of the pecu-
liar provisions of our statute which must control.

"* * * The rules invoked by the plaintiff in error
would be appicable to this case were it not for this stat-
ute and in that case the alleged acknowledgment would
have to be measured by those rules and would be perhaps
insufficient to imply a new promise. But as no such *im-
plication is necessary under our law,* the acknowledgment
iself being sufficient we find no trouble in applying its
statutory rule."

In Elder v. Dyer, 26 Kas. 609, it is said by the
court, (Valentine, J.), construing the Kansas statutes,
which is practically the same as Nebraska's:

"Other decisions are founded upon the statutes which
provide for taking causes of action on contract out of the
operation of the statute only by partial payments or by a
new promise. These decisions hold that no acknowledg-
ment can take a case out of the operation of the statute
unless the acknowledgment amounts in law to a new
promise. Of course, such is not the law in Kansas. Many
of the decisions also go to the extent of holding that the
action must be brought on the new promise and not upon
the original debt or claim. Neither is this the law in
Kansas * * *. Our statute to revive a debt or claim
requires only acknowledgment of an existing liability on
the particular claim in controversy and this acknowledg-
ment may be in any language which the party making it
desires to use. No phrase or particular form of language
is required; anything that will indicate that the party
making the acknowledgment admits that he is still liable
on the claim that he is still bound for its satisfaction,
that he is still held for its liquidation and payment is
sufficient to revive the debt or claim; and there is no
necessity that there should also be a promise to pay same;
acknowledgment of an existing liability on an honest debt
or claim generally raises an implied promise on contract

Cleland v. Hostetter.

to pay the same; but whether it does or not is not a question to be considered in this state. The statute says nothing about an implied contract or promise and the action if revived at all is not to be brought on the implied contract or promise but only on the original liability."

So, in the concurring opinion of Mr. Justice Brewer, then a member of the supreme court of Kansas, that learned jurist emphatically disposes of the suggestion, that an acknowledgment must under the Kansas statute evince a willingness to pay. He quotes this form of acknowledgment: "I owe that debt, I admit it is an existing and just claim upon me, but I never will pay it." "Here," says the learned justice, "there is the express and clear acknowledgment of an existing debt, but there is not only nothing indicating a willingness to pay but on the contrary an express refusal to pay. Is such an acknowledgment within the statute? Unhesitatingly I answer, Yes."

In Fort Scott v. Hickman, 112 U. S. 163, the court cites Elder v. Dyer, and while holding that under the Kansas statute "an acknowledgment cannot be regarded as an admission of indebtedness where the accompanying circumstances are such as to repel the inference, or to leave it in doubt whether the party intended to prolong the. time of legal limitation," it in terms holds that "an acknowledgment need not under the Kansas statute amount to a new promise."

Coming now to the Iowa decisions, we are of opinion that they clearly indicate a divergence of the statute now under consideration from the common law. Thus in Mahon v. Cooley, 36 Ia. 483, where it was argued that the admission pleaded was insufficient to toll the statute for the reason that no party to whom the promise was made was named therein and it was thus in fact made to no one who has an interest in the claim, it was said:"

"Regarding the instrument as an admission that the debt is unpaid we are of the opinion that the name of the party to whom it is made is not necessary to appear therein. The statute provides that an admission or new promise in writing will revive the cause of action when barred by the expiration of the time limited for the commence-

---

Cleland v. Hostetter.

---

ment of suits. Both are not required; the admission alone is sufficient. It is not regarded as a contract but is simply a written declaration that the debt is not paid. It is unnecessary that the name of the party to whom it is made should appear therein. The only object of the law is to secure written evidence attested by the signature of the debtor, that the debt is not paid. This is accomplished by a written admission although it does not show to whom it is made."

In Stewart v: McFarland, 84 Ia. 55, it is pointed out that under the statute here under consideration "both an admission that the debt is unpaid and a new promise to pay are not required to revive the cause of action, but either alone is sufficient for that purpose." The court proceeded: "At common law the admission removed the bar of the statute only when it was of such a nature that a promise to pay might be inferred from it: Hence it has been held that when the admission is made under such circumstances that a new promise cannot be inferred, as where it is accompanied by a statement that the debt will not be paid, or *when it is based upon a condition* which has not been performed, it will not operate to revive the cause of action." The court, however, as to the first of these common law rules clearly indicates the distinction made by the statute by saying: "Whether under the statutes of this state an unqualified admission of a debt would be unoperative to revive the cause of action, if accompanied by a refusal to pay, we need not determine." As to the second of these rules that when, as here claimed, the admission is accompanied by a condition which has not been performed, there is no revival, two of the later Iowa cases clearly indicate that no such rule prevails in that jurisdiction and that the common law has been to that extent abrogated by the statute which we have adopted. Thus, in Nelson v. Hanson, 92 Ia. 356, the language used was: You know that I will pay what I can and what is right." The court held that this was not an unqualified admission that the debt was unpaid, being qualified by the words "what is right." The court, however, in discussing the matter says: "Promises by the debtor to pay a claim 'as soon as possible' or 'as soon as he could' and others

Cleland v. Hostetter.

of a similar character have been held sufficient as admissions of the debt," citing a long line of authorities. In Jenckes v. Rice, 119 Ia. 451, the language was: "I cannot tell where I can get money enough to pay the note, but as true as God I will send it *as soon as I can get it,*" and this was held sufficient to place the case without the statute. We are aware that in the case of Penley v. Waterhouse, 3 Ia. 436, there are certain expressions to the effect that the Iowa statute is merely declaratory of the common law; and we have not overlooked the rule laid down by this court in the case of Armijo v. Armijo, 4 N. M. 57, reiterated in Bullard v. Lopez, 7 N. M. 563, and Raymond v. Newcomb, 10 N. M. 151, to the effect that in adopting the statute of another state or territory there is also adopted the construction placed upon it by the courts of such state or territory, unless for some good reason the courts of the state or territory adopting the statute should see proper to refuse to follow such decisions as sound interpretations of the statute." We are of opinion, however, that the general observations of the supreme court of Iowa in the case of Penley v. Waterhouse, to the effect that the Iowa statute simply declares the common law, are not as to this particular feature of the statute sustained by the later Iowa cases above referred to and are certainly not in accord with "a sound interpretation of the statute" as developed by the abundant authority of other jurisdictions construing similar statutes. To hold, following literally Penley v. Waterhouse, that the Iowa statute is simply declaratory of the common law, is to hold that our own statute is likewise simply the common law; and to do this will be to overrule Raymond v. Newcomb, *supra.* In that case this court had occasion to consider the case of Shepherd v. Thompson, 122 U. S. 232, cited as authority by the appellees. In the latter case the supreme court of the United States was construing a statute which it declared (p. 234) "closely follows the language of the English St. 21 James I., C. 16, Sec. 3," the original English statute. If, therefore, our statute is simply the common law re-enacted, the case of Shepherd v. Thompson, construing the Maryland common law statute

would have been controlling authority. This court, however, in Raymond v. Newcomb, says:

"Counsel for defendant in error contends that this statement is an admission that there was a mortgage, a hope expressed to pay it off and to apply the proceeds derived from a sale of the cattle thereon; that it was not an admission of the debt, as a personal obligation and was not such an admission from which the law will imply a promise to pay, relying upon the case of Shepherd v. Thompson, 122 U. S. 232 where the supreme court of the United States held that a mere acknowledgment of a debt is not sufficient but that there must be a distinct and unequivocal acknowledgment of the debt as still subsisting as a personal obligation of the debtor. In that case, however, the supreme court of the United States was considering a statute in force in the District of Columbia which is the statute of Maryland and *is quite different from the Iowa and New Mexico statutes, and the case is not in point here.* As said in the case of Mahon v. Cooley, supra., the admission alone is sufficient; it is not regarded as a contract but is simply a written declaration that the debt is unpaid."

We adhere to the construction thus put upon the statute by the case of Raymond v. Newcomb and we reiterate the conclusion therein announced that the New Mexico statute materially diverges from the common law. We further hold that under the statute it does not require both an admission and a new promise to revive the action, but that either is sufficient; that the admission need not of itself amount to a new promise; and that the language used by the debtor in this case, that, he will pay "when he can," is an admission that the debt is unpaid, sufficient to take the case out of the statute, whatever may be the difference of authority as to its effect as a promise. We do not find it necessary to determine in this case the effect of the qualification of an admission otherwise explicit, as for example by a claim of the statute of limitation, for the reason that the letters relied upon, while they mention the fact that the claim is "outlawed," clearly evince a disposition on the part of the debtor not to claim the benefits of the statute.

In view of the constantly recurring construction of this statute we feel that we should add further that there is no intention by this opinion to relax in any respect the rule indicated in Raymond v. Newcomb, that the admission that the debt is unpaid must, to be effectual, be clear, unqualified and reasonably certain. What we do hold is that the language here used constitutes an admission within that rule.

The judgment of the court below is reversed and the cause remanded for further proceedings in accordance with this opinion.

William J. Mills, C. J., John R. McFie, A. J., Frank W. Parker, A. J., Edward A. Mann, A. J., Ira A. Abbott, A. J., concur.